# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# (TAMPA DIVISION)

| | |
|---|---|
| Karen Boddison, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company,<br><br><br>    Defendant. | Case No: 8:20-cv-02139<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>  **1. VIOLATION OF FLA. STAT. §§ 502.201, *et seq.*;**<br>  **2. VIOLATION OF FLA. STAT. §§ 672.313 and 680.21**<br>  **3. VIOLATION OF FLA. STAT. §§ 672.314 and 680.212**<br>  **4. FRAUDULENT OMISSION**<br>  **5. UNJUST ENRICHMENT**<br>  **6. NEGLIGENCE; AND**<br>  **7. VIOLATION OF MAGNUSON-MOSS WARRANTY ACT 25 U.S.C. §§ 2301, *et seq.***<br><br>  <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Karen Boddison ("Plaintiff") brings this class action on behalf of herself and all others similarly situated against defendant General Motors LLC ("GM" or "Defendant"). Based on personal knowledge as to matters relating to herself and her own actions, and on information and belief based on the investigation of counsel, including counsel's review of consumer complaints available on the database of the National Highway Transportation Safety Administration ("NHTSA") and other publicly available information, as to all other matters, Plaintiff alleges as follows:

## I.    INTRODUCTION

1.    On December 5, 2019, GM submitted Technical Service Bulletin No. PIT5722 (the "December Bulletin") to NHTSA regarding a defect inherent in certain GM vehicles equipped with a "IOR 7-inch in-dash Audio System" that manifests by causing the "radio volume [to] ramp up to maximum without input to the volume controls"[1]; on information and belief, this defect is present in all GMC and Chevrolet branded vehicles equipped with the "IOR 7-inch in-dash Audio System" ("Defective Infotainment System"). The December Bulletin is attached hereto as Exhibit A as though fully incorporated herein.

2.    In the December Bulletin, GM identified a dangerous defect in certain 2019 Chevrolet and GMC Vehicles equipped with the Defective Infotainment System that can result in the volume rapidly increasing to the maximum without user input while the driver is operating the vehicle. The sudden and unanticipated noise that manifests while a driver is operating the vehicle can, and has, resulted in surprise, disorientation, and/or distraction to the driver, and increases the potential for a collision and injury. When customers present their vehicles to an authorized repair facility for repair under the applicable warranties, GM declines to replace or

---

[1] NHTSA Technical Service Bulletin PIT5722.

repair the Defective Infotainment System and declines consumer requests for reimbursement. GM has not recalled the dangerous and unusable Defective Infotainment System and has not identified a remedy since the issuance of the December Bulletin.

3.     On March 20, 2020 GM issued Technical Service Bulletin No. 20-NA-012 (the "March Bulletin") detailing a software update that reduces, but does not eliminate, occurrence of unanticipated volume spikes in Model Year 2020 Chevrolet Blazer, Camaro, Colorado, Equinox, Sonic, Trax, and Silverado 1500, 2500HD, and 3500HD as well as Model Year 2020 GMC Canyon, Terrain, and Sierra 1500, 2500HD, and 3500HD vehicles equipped with the dangerous Defective Infotainment System. GM has identified no such update concerning the issue described in the December Bulletin concerning the Model Year 2019 vehicles equipped with the Defective Infotainment System. The March Bulletin is attached hereto as Exhibit B as though fully incorporated herein.

4.     On information and belief, the same dangerous condition is present in the following Model Year 2019 vehicles equipped with the "IOR 7-inch in-dash Audio System" that gave rise to the December Bulletin: Chevrolet Colorado; Chevrolet Equinox; Chevrolet Silverado 1500; GMC Canyon; and the GMC Sierra 1500 as well as Model Year 2020 vehicles identified in the March Bulletin (the subset of the 2019 and 2020 models that include the Defective Infotainment System are the "Class Vehicles"[2]).

5.     Issues with the Defective Infotainment Systems are not limited to disorienting and unanticipated volume spikes. Plaintiff has also experienced issues with the Bluetooth communication system, the infotainment screen suddenly going

---

[2] Class Vehicles are defined as the 2019: Chevrolet Colorado; Chevrolet Equinox; Chevrolet Silverado 1500; GMC Canyon; and the GMC Sierra 1500 as well as the 2020: Chevrolet Blazer; Camaro; Colorado; Equinox; Sonic; Trax; and Silverado 1500; 2500HD; and 3500HD, and 2020: GMC Canyon; Terrain; and Sierra 1500; 2500HD; and 3500HD.

dark, and a faulty rearview image display viewed via the screen of the Defective Infotainment Systems.

6.      The Bluetooth communication system of the Defective Infotainment Systems does not work as represented by GM because when an incoming call is answered the ringer intermittently does not cease and instead remains at the same volume throughout the call and can be heard by both the caller and the vehicle operator. During these times, the operator concludes the call, and the ringing sound will persist, at volume, even after the vehicle is shut off. To terminate the sound, the vehicle operator must turn off the ignition, open and close the vehicle door, and reengage the ignition. Only after these steps are completed will the ringing sound cease.

7.      The rearview image display, an essential component of the Defective Infotainment System, is faulty because it intermittently displays the rearview on the Defective Infotainment System screen for 30-50 seconds after the vehicle is shifted from the reverse gear to "Drive" regardless of whether the vehicle has traveled 10 meters or reached a speed of 10 mph. This condition creates unnecessary confusion to the driver who is likely to believe the vehicle is in reverse when it actually is in drive. If the driver accelerates while in "Drive" while believing the vehicle remains in reverse gear due to the display, it will increase the likelihood of collision or injury. The failure of the rearview image display to resolve when the vehicle is put into "Drive" even after it travels 10 meters or reaches 10 mph violates safety requirements mandated by NHTSA for all vehicles manufactured after May 1, 2018. 49 C.F.R. § 571.111 S62.4.

8.      Plaintiff has also experienced the infotainment image display suddenly going black while she is operating the vehicle. This presents a hazard as the infotainment screen displays necessary information to the driver and is intended to

remain displayed to the driver unless the rearview image is displayed as part of a backup event.

9.     The Defective Infotainment Systems in Class Vehicles present an immediate risk of physical injury and increased likelihood of collision when used in their intended manner and for their ordinary purpose.

10.     The Defective Infotainment Systems in Class Vehicles violate the express warranties offered by Chevy and GMC because GM cannot eliminate the dangerous and unanticipated volume spike, the persistent ringing, or the failure of the rearview image display to resolve per NHTSA safety mandates in order to conform the Class Vehicles with the applicable express warranties.

11.     The Defective Infotainment Systems in Class Vehicles violate the implied warranty of merchantability that accompanies the Class Vehicles because the dangerous and defective conditions described above existed at the time of sale and renders the vehicle unfit for the ordinary purpose for which the Class Vehicles are used and GM cannot conform the Class Vehicles with the implied warranty of merchantability or NHTSA safety regulations.

12.     GM has long known of the Defective Infotainment System issues in the Class Vehicles, despite marketing Class Vehicles as safe and dependable. GM also represents its warranties in its marketing material despite being unable, or unwilling, to honor their warranties in the case of the Defective Infotainment System. Customers rely on these warranties when deciding what vehicle to purchase or lease and what amount to pay for the vehicle. On information and belief, GM has received thousands of warranty requests related to the Defective Infotainment System in Class Vehicles.

13.     The Defective Infotainment System in the Class Vehicles exposes occupants and others to extreme danger, bodily injury, or even death. When radio volume unexpectedly and rapidly spikes to the maximum level, without warning and

while the vehicle is being operated on streets or highways, it creates a heightened risk for collision. Likewise, a driver that is startled, surprised, or distracted by the rapid volume increase resulting from the Defective Infotainment System may cause death or bodily injury to other drivers on the road.

14. Drivers subject to persistent ringing emanating from the Bluetooth feature of the Defective Infotainment System are unable to stop the noise, a noise designed to grab the attention of the call's recipient, until they pull the vehicle over, turn the engine off, exit the vehicle, and reengage the engine. This noise and the process by which the noise is terminated is unnecessarily distracting to the driver and disrupts normal and anticipated operation of the Class Vehicles.

15. Similarly, the failure of the back-up camera to disengage once the driver shifts into "Drive" is likely to confuse a driver into thinking they remain in reverse gear. If a driver believes they are in "Reverse" when they are in "Drive," they may unintentionally accelerate the vehicle forward which increases the likelihood of collision or injury. Moreover, NHTSA mandates that all rearview image displays equipped on vehicles manufactured after May 1, 2018 49 CFR § 571.111, *et. seq.* which requires, *inter alia*, that, "[t]he rearview image [. . .] shall not be displayed after the backing event has ended." 49 CFR § 571.111 S6.2.4.

16. Similarly, the sudden lose of image display on the infotainment screen presents a hazard as the driver can no longer see necessary information or interact with the infotainment screen. When the infotainment screen loses the image, the entire system fails to function as intended by Defendant and cannot be operated by the driver.

17. While GM knew about the Defective Infotainment System and the associated dangers, GM manufactured, marketed, sold, leased, and warranted the Class Vehicles, and, in its quest for corporate profits, did not disclose to the unsuspecting public or to purchasers that the Class Vehicles were inherently

defective, dangerous and create a grave risk for bodily harm or death. On information and belief, GM was aware of numerous internal technical reports and customer complaints associated with the Defective Infotainment System. GM did not disclose, and to this day has not fully disclosed, what it knew about the Defective Infotainment System to prospective and actual purchasers and lessees. Had GM disclosed the Defective Infotainment System to purchasers or lessees they would not have purchased or leased the Class Vehicles or would have paid less to do so.

18.    To date, GM has not identified a remedy for the Defective Infotainment System, stating only that "Engineering is analyzing the issue.  Please do not replace any parts for this concern.  Additional information will be made available once analysis is complete." No update to the December Bulletin has been made since its issuance in December 2019. Thus, whether there will be a corrective repair for the Model Year 2019 Class Vehicles, if so, when, and whether it will fix the problem are all unknown. Similarly, the March Bulletin identifies that the same Defective Infotainment System issue is present in the Model Year 2020 Class Vehicles but that the software update only reduces, but does not eliminate, the dangerous and disorienting volume spikes emanating from the Defective Infotainment System.  As a result, owners and lessees of the Class Vehicles are unknowingly driving on roads and highways in potentially ticking time bombs while GM knowingly exposes its customers, from whom it made at millions of dollars from the sale of just the Class Vehicles, to the risk of grave physical harm and even death.

19.    Separately, with or without a viable remedy for the Defective Infotainment System, the defective condition has decreased the intrinsic and resale value of the Class Vehicles and Plaintiff and other Class members have been damaged as a result.

20.    Throughout the relevant period, GM's marketing of the Class Vehicles was and is replete with assurances about their safety and dependability. A vehicle

equipped with a radio that rapidly increases its volume to the maximum without user input, surprising, startling, or causing distraction to the driver, is inherently unsafe and renders GM's marketing of the Class Vehicles untrue and materially misleading. Plaintiff and other Class members have been damaged as a result.

21.    Plaintiff, on behalf of herself and the Classes (defined below), seeks redress for GM's egregious and unconscionable misconduct, asserts claims on behalf of a National and Florida class for violations of: (1) Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 502.201, *et seq.*); (2) Breach of Express Warranty (Fla. Stat. §§ 672.313 and 680.21.); (3) Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212.); (4) Fraudulent Omission; (5) Unjust Enrichment; (6) Negligence; and (7) a claim for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. In addition, Plaintiff seeks an order enjoining GM's conduct, directing it to inform Class members of the Defective Infotainment System and to cease driving their vehicles, directing GM to contact Class members and advise them that it will provide free loaner vehicles of the type of Class Vehicle each owns or leases until a remedy for the Defective Infotainment System is installed in their Class Vehicles; compensatory damages; restitution; and punitive damages.

## II.    JURISDICTION AND VENUE

22.    Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and at least one Defendant are citizens of different states and satisfy the diversity requirement, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

23.    Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff's Magnuson-Moss Warranty Act claim arises under

federal law, and this Court has supplemental subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

24.     This court has personal jurisdiction over GM because GM conducts substantial business in this District and some of the actions giving rise to this action took place in this District and/or caused injury to property in this state; and products, materials, or things processed, serviced, or manufactured by GM anywhere were used or consumed in this state in the ordinary course of commerce, trade, or use. GM is one of the largest manufacturers and sellers of automotive vehicles in the world. Defendant has, at all relevant times, conducted and continue to conduct business in Florida, and every other state in the country.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, GMC has caused harm to Plaintiff and other Class members in this District, and GMC is a resident of this District under 28 U.S.C. § 1391(c)(2) because it is subject to personal jurisdiction in this District. Also, venue is proper in this district pursuant to 18 U.S.C. § 1965.

### III.    <u>PARTIES</u>

26.     Plaintiff Karen Boddison is and, at all times relevant hereto, was a resident of Manatee County and a citizen of Florida.

27.     Plaintiff purchased a new 2019 Chevrolet Colorado from Cox Chevrolet in Bradenton Florida, on or about August 28, 2019. Plaintiffs vehicle was manufactured after May 1, 2018. Plaintiff's vehicle has a Defective Infotainment System and is a Class Vehicle.

28.     The Defective Infotainment System creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or bodily injury to Plaintiff, the Class, and others on the road. Likewise, the Defective Infotainment

System fails to operate in the manner a reasonable consumer would expect and fails to perform the functions GM advertises with regard to the Bluetooth system and as required by law with respect to the rearview image display.

29.     Plaintiff purchased her Class Vehicle with the Defective Infotainment System as part of a transaction in which GM did not disclose material facts related to the automobile's essential and expected purpose – safe transportation. Plaintiff did not receive the benefit of her bargain. She purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Plaintiff's vehicle is equipped with the Defective Infotainment System which has significantly diminished the value of Plaintiff's Class Vehicle. Had GM disclosed the Defective Infotainment System, Plaintiff would not have purchased her Vehicle, or certainly would have paid less to do so.

30.     Plaintiff only became aware of the Defective Infotainment System shortly after purchasing the vehicle. Within two months of purchase, Plaintiff was traveling in the vehicle at speed when she was subjected to the sudden and jarring blast from the radio. Plaintiff brought her vehicle to Cox Chevrolet and explained the issue to technicians there. Cox Chevrolet performed a radio diagnosis and discovered that the condition was the result of a "software anomaly," but that no software update was available at the time. Plaintiff suffered subsequent occurrences of the issue and brought the vehicle back to Cox Chevrolet for warranty repairs due to the Defective Infotainment System in March 2020. Again, technicians were able to identify the issue but were unable to remedy it as GM has not yet determined the appropriate method of repair.

31.     In summer of 2020, Plaintiff was driving the vehicle with the radio intentionally turned to low volume when the volume suddenly "ramped up" to the maximum level. The sudden and jarring sound momentarily disoriented her causing

her to lose control and veer off the road almost colliding with a roadside object. Plaintiff has continued to experience jarring volume spikes while operating the vehicle; likewise, she has also noticed noises emanating from the speakers, like the ringing associated with the Bluetooth communication system, after the vehicle had been completely shut down. Having suffered repeated manifestations of the defect since the vehicle was examined in December 2019 and March 2020, Plaintiff took the vehicle to Cox Chevrolet for warranty repair in August and was told that though the problem had been identified, there was no known repair and that it was unknown when a repair would be available. After Plaintiff requested warranty repairs from Chevrolet Customer Assistance, she received an August 4, 2020 email from CustomerCare@chevrolet.com stating, in part, "…no compensation will be provided as *[your claim] was denied and no repairs will be made…*" (emphasis added). On August 17, 2020 Chevrolet Customer Assistance sent Plaintiff a letter stating that it would offer Plaintiff Component Coverage over certain "Driver Info & Entertainment components." However, when Plaintiff contacted Cox Chevrolet on August 28, 2020 for the same previously requested repair, she was told that no repair could be performed because none was available. Further, as of the date of filing, GM has not updated the December Bulletin to show that a remedy was available.

32.     General Motors LLC ("GM") is a Delaware limited liability company, with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of Delaware and Michigan. The sole member and owner of General Motors LLC is General Motors Holding LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan. The sole member and owner of General Motors Holdings LLC is General Motors Company, which is a Delaware corporation, with its

principal place of business in the State of Michigan and is a citizen of Delaware and Michigan.

33.    GMC is a wholly owned brand, subsidiary, and/or division of GM. GM employs engineering, legal, compliance, and regulatory personnel to make decisions regarding the subject GMC vehicles. These employees, on behalf of GM, ultimately made or ratified the decisions that allowed the subject GMC vehicles to be fraudulently designed, manufactured, marketed, and sold.

34.    Chevrolet is a wholly owned brand, subsidiary, and/or division of GM. GM and employs engineering, legal, compliance, and regulatory personnel to make decisions regarding the subject Chevrolet vehicles. These employees, on behalf of GM, ultimately made or ratified the decisions that allowed the subject Chevrolet vehicles to be fraudulently designed, manufactured, marketed, and sold.

## IV.    <u>FACTUAL ALLEGATIONS</u>

35.    GM is the world's fifth largest manufacturer of automotive vehicles and sells its vehicles across the United States through a network of over 4,100 dealers, including those in Florida.

36.    GM maintains a GMC brand where it designs, manufacturers, markets and sells Chevrolet branded vehicles across the United States, including in Florida.

37.    GM also maintains a Chevrolet brand where it designs, manufacturers, markets and sells Chevrolet branded vehicles across the United States, including in Florida.

38.    Impacted Chevrolet and GMC models include the 2019: Chevrolet Colorado; Chevrolet Equinox; Chevrolet Silverado 1500; GMC Canyon; and the GMC Sierra 1500 as well as the 2020; Chevrolet Blazer; Camaro; Colorado; Equinox; Sonic; Trax; and Silverado 1500; 2500HD; and 3500HD, and 2020: GMC Canyon; Terrain; and Sierra 1500; 2500HD; and 3500HD.

39.    GM has branded itself, inclusive of the Chevrolet and GMC brands, as the maker of safe, dependable vehicles and has spent millions, if not billions, of dollars on extensive marketing and advertising campaigns to cement the association of safety and reliability with its GMC and Chevrolet brand automobiles, including Class Vehicles.

40.    GM designs, manufactures, markets, and sells Class Vehicles, and has, at all times, uniformly branded the Class Vehicles as safe and dependable.

### A.    The Class Vehicles' Defective Infotainment System

41.    The standard "entertainment" trim package included with the Class Vehicles includes an "IOR Audio System," a 7-inch diagonal GM-made "Infotainment System," which included a multi-touch display, AM/FM stereo, Bluetooth phone connection, rearview image display, and other features. Class Vehicles only include models equipped with this same Defective Infotainment System.

42.     At all times, by design, the Defective Infotainment System and all of its components are operational when a driver is piloting the Vehicle.

43.    The Class Vehicles' infotainment system suffers from a fundamental defect causing it to rapidly increase the volume to maximum without driver input and while the vehicle is in motion. Specifically, as GM admitted in the Bulletin, the "radio volume may ramp up to maximum without input to the volume controls." Based on GM's own admission the failure was likely caused by a "software anomaly" within the infotainment system's programming.

44.     The infotainment system in the Class Vehicles was inadequately designed, programmed, and/or incorporated to operate under the conditions it was intended by its designers to operate. Because the Defective Infotainment System rapidly increases the volume to maximum, without warning and while the driver is operating the vehicle, it can surprise or startle the driver, or cause distraction that may result in a collision causing death or injury to person or property.[3] Indeed, Plaintiff was startled due to the Defective Infotainment System rapidly increasing to maximum volume and nearly suffered a collision as a result.



45.     The Class Vehicles' infotainment system is similarly defective because the rearview image display remains in some cases for an additional 30-50 seconds after the driver has shifted from "Reverse" to "Drive" regardless of whether the vehicle has reached a speed of 10mph or traveled a continuous duration of 10 meters. This condition violates the NHTSA mandate requiring that the rearview image "shall not be displayed after the backing event has ended." This defective condition violates 49 CFR § 571.111 *et. seq*. a regulation intended to increase the safety of vehicle occupants and pedestrians.

46.     Further still, the persistent ringing noise emanating from the Defective Infotainment System creates a dangerously distracting and disorienting environment

---

[3] The following consumer complaint from an online forum details the safety hazard associated with the Defective Infotainment System. https://www.gm-trucks.com/forums/topic/235051-stereo-volume-spikes-loud-while-driving/

for the driver while the vehicle is in motion and cannot be stopped until the driver turns off the ignition exits the vehicle and reengages the ignition.

47.     Accordingly, the Defective Infotainment System in the Class Vehicles exposes occupants and others to extreme danger, even death.

48.     Vehicle manufacturers like GM monitor NHTSA and other databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects. Accordingly, GM knew, or should have known, of the many complaints lodged with NHTSA and elsewhere about the specific safety hazard that is the subject of the Bulletin.

49.     Consumers filed complaints about the Defective Infotainment System on other websites that GM monitored, or should have been monitoring like cartalk.com, a popular site that collects complaints lodged by drivers, and others.

50.     Class Vehicles suffer from a uniform design defect which causes the Defective Infotainment System to operate in a manner that renders the vehicle unsafe. Compounding the issue, drivers are not protected from these safety risks by a warning prior to the Defective Infotainment System rapidly maximizing volume.

51.     The Defective Infotainment Systems causes vehicles to become dangerous to operate while on the road, and therefore they are not fit for their ordinary purpose.

**B.     GM Knew About the Defective Infotainment System But Continued to Manufacture, Market, and Sell Class Vehicles.**

52.     GM knew or should have known about the Defective Infotainment System, but it concealed or failed to disclose the defect and continued to manufacture, market, and sell Class Vehicles. Specifically, GM knew or should have known the Class Vehicles needed radios without the defect in the Defective Infotainment Systems, but it failed to provide corrective action.

53.     GM knew or should have known about the Defective Infotainment System at least as soon as the prerelease process of designing, manufacturing, engineering, and testing the Class Vehicles. During these phases, GM would have gained comprehensive and exclusive knowledge about the Radios, particularly the basic engineering principles behind the construction and function of the Defective Infotainment Systems. However, GM failed to act on that knowledge and instead installed the Defective Infotainment Systems in the Class Vehicles, and subsequently marketed and sold the vehicles to unsuspecting consumers without disclosing the safety risk or warning Class members.

54.     Federal law requires automakers like GM to be in close contact with NHTSA regarding potential defects.[4] Accordingly, GM should (and does) monitor NHTSA databases for consumer complaints regarding their automobiles as part of their obligation to identify potential defects in their vehicles, such as the Defective Infotainment System.

55.     By way of example, in April of 2019 a user posted concerns about the Defective Infotainment System on cartalk.com, a popular and publicly available forum used to discuss automobiles. On April 11, 2019 user 'Terry29' posted:[5]



---

[4] *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000)
[5] https://community.cartalk.com/t/2019-chevrolet-colorado-radio-issues/138343

16

56.     Accordingly, GM was, or should have been, aware of the Defective Infotainment System and associated safety concerns since before Plaintiff purchased her vehicle from Cox Chevrolet in August 2019.

57.     Finally, GM knew about the Defective Infotainment System through its own investigation. On information and belief, GM conducted numerous field investigations that it later used to generate the technical service bulletins that identified the issue. However, GM failed to act on that knowledge by warning Class members or by identifying a repair or replacement part.

58.     To date, GM has not identified a remedy for the Defective Infotainment System, stating only that "Engineering is analyzing the issue.  Please do not replace any parts for this concern.  Additional information will be made available once analysis is complete." No update has been made since this initial Bulletin in December 2019.  Thus, whether there will be a corrective repair, if so, when, and whether it will fix the problem are all unknown. Further still, GM has not instructed its dealers to display the bulletin, or to disclose the Defective Infotainment System, to purchasers and lessees at the time of sale. By so omitting this material information, GM intends that purchasers and lessees of the Class Vehicles rely on the omission to induce them into purchasing the vehicle at an unjustified price.

59.     Despite GM's extensive knowledge regarding the existence and dangerous condition of the Defective Infotainment System, GM failed to act on that knowledge by warning Class members at the time of sale or after. Sacrificing consumer safety for profits, GM instead chose to enrich itself by using false and misleading marketing to sell the Class Vehicles as safe and durable at inflated prices.

**C.     GM Touted the Class Vehicles as Safe and Dependable, Concealing the Defective Infotainment System from Consumers.**

60.     GM's overarching marketing message for the Class Vehicles was that the vehicles are safe and dependable. This marketing message is false and

misleading given the propensity of the Defective Infotainment Systems in the Class Vehicles to create a safety issue by rapidly and without warning increasing the volume to maximum, thereby increasing the risk of a crash.

61.     GM is one of the ten biggest advertising spenders in the United States and much of that advertising budget goes toward promoting its brands as safe and dependable. GM's main website touts the safety features of its vehicles, attempting to induce potential customers to purchase or lease the Class Vehicles.

62.     On GM's consumer facing websites for its GMC and Chevrolet brands, there is a page describing the Company's leadership that repeats its consistent and pervasive marketing message that GM vehicles are safe and dependable. As an example,  the Chevrolet site states: "Nothing is more important than feeling confident and secure when you're on the road. That's why your safety and well-being are at the core of everything we do. And with a wide range of available features and technologies, our vehicles are constantly working to help you drive as safely as possible."[6]

63.     GM's Chevrolet and GMC websites currently contain and have contained these representations at all relevant times during the Class Period.

64.     In addition to its representations about GMC and Chevrolet vehicles generally, GM's websites for their GMC and Chevrolet brands contain specific representations about safety on the pages for specific models of the Class Vehicles.

65.     For example, webpages of various models of the Class Vehicles include multiple photographs and descriptions advertising the safety systems of the 2021 GMC models, as well as 2021 Chevrolet models. On information and belief, similar representations were made about the 2019 and 2020 models of the Class Vehicles, at issue here, when they were being marketed on the GMC and Chevrolet websites.

---

[6] https://www.chevrolet.com/safety

Those sections list an array of safety features such as airbags, side impact protection, as well as advanced safety features like rear-facing cameras, lane assist, and forward collision alert.

66.    A car with a Defective Infotainment System that can increase to maximum volume at any time, without warning, and while the vehicle is in operation on streets and highways resulting in surprise and distraction to the driver, as do the Class Vehicles, and thereby exposes its occupants to the risk of injury or death *is not a safe car*. Thus, GM's marketing of the Class Vehicles as safe is false and misleading and omits facts that would be material to consumers such as Class members who purchased or leased Class Vehicles because they were consistently marketed as having the utmost safety on the road.

67.    Similar representations to those that GM made on the GMC and Chevrolet websites were also included in brochures for the Class Vehicles and throughout GM's other messaging about the Class Vehicles.

68.    GM marketed the Class Vehicles as safe and dependable but failed to disclose the existence and impact of the Defective Infotainment System and/or that the Class Vehicles were not safe or dependable. Specifically, GM:

a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Defective Infotainment System, despite its knowledge of the performance issues;

b.    Failed to disclose, at and after the time of purchase, lease, and/or service, the Class Vehicles' Defective Infotainment Systems were defective and not fit for their ordinary purpose, despite its knowledge; and

c.     Failed to disclose and actively concealed the existence and pervasiveness of the Defective Infotainment System, despite its knowledge.

69.    GM's deceptive marketing and willful and knowing failure to disclose the Defective Infotainment System damaged, and continues to damage, Plaintiff and Class members. If Plaintiff and Class members had known of the Defective Infotainment System and/or that the Class Vehicles were not safe and durable, they would not have purchased or leased the Class Vehicles or certainly would have paid less to do so.

**D.     Applicable Warranties**

70.    GM sold and leased the Class Vehicles with express written warranties.

71.    For the GMC branded Class Vehicles, GM offered a written express "bumper-to-bumper" warranty covering GMC brand vehicles for 36 months or 36,000 miles covering all components (except normal wear and tear). Defendant states the that "Repairs will be made to correct any defect in materials or workmanship."

72.    Likewise, for the Chevrolet branded Class Vehicles, GM also offered a written express "bumper-to-bumper" warranty covering Chevrolet brand vehicles for 36 months or 36,000 miles covering all components (except normal wear and tear).  Defendant also states the that "Repairs will be made to correct any defect in materials or workmanship."

73.    Because GM is a merchant who respect to the goods at issue, all vehicles which it sells are accompanied by the implied warranty of merchantability which guarantees that GM vehicles will be fit for the ordinary purposes for which the vehicle will be used.

74.    GM provides the express warranty to buyers and lessees on the window sticker of all vehicles that it sells and purchasers and lessees rely on that warranty

when deciding whether or not to purchase the vehicle and at what price to purchase the vehicle.

75.     However, GM breached these warranties, as it admitted in NHTSA Technical Service Bulletin PIT5722, when it reported it did not have a repair for the Defective Infotainment System and when it declined to repair or replace the Defective Infotainment System when customers brought the Class Vehicles to authorized repair facilities and/or dealerships for a remedy.

## V.     CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated.

77.     Plaintiff seeks to represent a Florida statewide class ("Florida Class") defined as follows:

> All current and former owners and/or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Florida within the applicable statute of limitations.

78.     Plaintiff also seeks to represent a class ("National Class") defined as:

> All current and former owners and/or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States within the applicable statute of limitations.

79.     Excluded from the Florida and National Classes ("Classes") are GM and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend definitions of the Classes, and to add additional classes and sub-classes, as appropriate, during the course of this litigation.

80.    This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

81.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiff is informed and believes that there are not less than at least approximately 500,000 members of the Classes, the precise number of Class members is unknown to Plaintiff but may be ascertained from GM's books and records. National and Florida Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

82.    **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

a.    whether GM's alleged conduct violates applicable law;

b.    whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

c.    whether GM made false or misleading statements and/or material omissions about the quality and safety of the Class Vehicles;

d.    whether the Class Vehicles contain the Defective Infotainment System;

e.   whether GM had actual or implied knowledge about the alleged defect but failed to disclose it to Plaintiff and the other members of the Classes;

f.   whether GM's omissions and concealment regarding the quality of the Class Vehicles were likely to deceive the Statewide Class members in violation of the state consumer protection statutes alleged herein;

g.   whether GM breached its express warranties with respect to the Class Vehicles;

h.   whether GM breached its implied warranties with respect to the Class Vehicles;

i.   whether the members of the Classes overpaid for their Class Vehicles as a result of the defect alleged herein;

j.   whether the members of the Classes are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

k.   the amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

83.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because Plaintiff and the members of the Classes purchased or leased Class Vehicles that contain Defective Infotainment Systems, as described herein. Neither Plaintiff nor the other members of the Classes would have purchased the Class Vehicles or would have as much as they did for the Class Vehicles, had they known of the Defective Infotainment System. Plaintiff and the other members of the Classes suffered

damages as a direct proximate result of the same wrongful practices in which GMC engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other members of the Classes.

84. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Classes that she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

85. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** GM has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the National and Florida Class members as a whole.

86. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against GM, so it would be impracticable for the other members of the Classes to individually seek redress for GM's wrongful conduct. Even if these Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device, as intended by Congress, presents far fewer management difficulties, and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT ONE

### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
**Fla. Stat. §§ 502.201, *et seq.***
**(Individually and on Behalf of the Florida Class)**

87.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

88.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Florida Class.

89.     By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of F.S.A. § 501.204.

90.     GM's omissions regarding the Defective Infotainment System, described above, that results in the Defective Infotainment System rapidly increasing in volume without warning or input from the driver, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

91.     GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Defective Infotainment System.

92.     Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Defective that results in the Defective Infotainment System rapidly increasing in volume without warning or input from the driver, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

93.     Had GM disclosed all material information regarding the Defective Infotainment System to Plaintiff and the other Class members, Plaintiff and the other

Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

94.    GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

95.    GM's provision of and subsequent refusal to honor their warranty obligations with respect to the Defective Infotainment System is a deceptive act and practice because GM induced customers into purchasing or leasing Class Vehicles by leading them to believe that any defects that were identified in the vehicle would be repaired under the applicable warranty. When presented with requests to repair the Defective Infotainment Systems, GM declined to repair the Class Vehicles or reimburse customers.

96.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with Defective Infotainment Systems that are essentially unusable for the purposes for which they were sold. GM's business practices are further unfair because they provision consumers of Class Vehicles with vehicles that do not conform with NHTSA safety mandates and decline to correct that nonconformity through the applicable warranties. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Defective Infotainment System, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

97.    As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the

Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Defective Infotainment System been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under F.S.A. §§ 501.201, et seq.

## COUNT TWO

**BREACH OF EXPRESS WARRANTY**
**Fla. Stat. §§ 672.313 and 680.21**
**(Individually and on Behalf of the Florida Class)**

98.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

99.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Florida Class as a result of Defendant's breach of its express warranties.

100.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

101.    In its New Vehicle Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2019 and 2020 Chevrolet Limited Warranty guide:

> This warranty is for Chevrolet vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty                                                      period.
>
> The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period…
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

102.   On information and belief, GM's warranty for GMC branded Class Vehicles mirrors the language included above for GM's Chevrolet branded Class Vehicles.

103.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the Defective Infotainment System.

104.   GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

105.   Plaintiff notified GM of the Defective Infotainment System, and its corresponding breach of warranties, when she brought her vehicle to Cox Chevrolet for repair of the Defective Infotainment System. Plaintiff also notified GM directly and on August 4, 2020 Chevrolet Customer Service declined to compensate Plaintiff for the defect or to repair the Defective Infotainment System. GM was also provided notice of the Defective Infotainment System through numerous complaints lodged by consumers directly to GM and through its dealers, as well as its own internal engineering knowledge.

106.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

107.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

108.   Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not

conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

109.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

110.   As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT THREE

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## Fla. Stat. §§ 672.314 and 680.212
## (Individually and on Behalf of the Florida Class)

111.   Plaintiff incorporates by reference each allegation as if set forth fully herein.

112.   Plaintiff bring this claim individually and on behalf of the Florida class as a result of Defendant's breach of the implied warranty of merchantability.

113.   GM is a "merchant" and the Class Vehicles are "goods" as defined in Fla. Stat. §§ 672.104 and 672.105.

114.   Pursuant to Fla. Stat. §§ 672.314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the sale or lease of the

product. GM impliedly warranted that the Class Vehicles were of a merchantable quality.

115. By placing the Class Vehicles in the stream of commerce, GM impliedly warranted that the Class Vehicles are safe, and that all claims in their advertising and marketing of the Class Vehicles were true.

116. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale or lease and at all times thereafter, the Class Vehicles were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles are equipped with a Defective Infotainment System that distracts and disorients the driver increasing the likelihood of a collision and jeopardizing the health and safety of Class Vehicle occupants and the driving public.

117. Further, GM has refused to provide an adequate warranty repair for the Defective Infotainment System, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to the Defective Infotainment Systems have been denied adequate repair. The result is that GM has sold consumers Class Vehicles that do not satisfy NHTSA safety regulations and GM refuses to conform those vehicles to the NHTSA mandates.

118. Plaintiffs and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

119. At all times that GM warranted and sold the Class Vehicles, they knew or should have known that their warranties were false, and yet they did not disclose the truth, or stop manufacturing, marketing, or selling the Class Vehicles, and instead continued to issue false warranties, and continued to insist the products were safe.

The Class Vehicles were defective when GM delivered them to their resellers, dealers, and distributors which sold the Class Vehicles, and the Class Vehicles were therefore still defective when they reached Plaintiffs and the Class.

120.   GM's resellers, dealers, and distributors are intermediaries between Toyota and consumers.  These intermediaries sell Class Vehicles to consumers and are not, themselves, consumers of Class Vehicles, and therefore have no rights against Toyota with respect to Plaintiff's and all other Class members' acquisition of Class Vehicles.  GM's warranties were designed to influence consumers who purchased and/or owned Class Vehicles.

121.   Plaintiffs and each Class member's acquisition of the Class Vehicles suffices to create privity of contract between Plaintiffs and all other members of the Class, on the one hand, and GM, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and the Class members are intended third-party beneficiaries of contracts between GM and their resellers, authorized dealers, and, specifically, of GM's implied warranties.

122.   As a direct and proximate result of GM's breach of implied warranties of merchantability, Plaintiff and the Class are entitled to damages in an amount to be determined at trial.

## COUNT FOUR

### FRAUDULENT OMISSION
### (Individually and on Behalf of the Florida Class)

123.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

124.   Plaintiff brings this cause of action individually and on behalf of the Florida Class.

125.   GM was aware of the Defective Infotainment System within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

126.   Having been aware of the Defective Infotainment System within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Defective Infotainment System, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

127.   GM did not disclose the Defective Infotainment System within the Class Vehicles to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

128.   For the reasons set forth above, the Defective Infotainment System within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

129.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

130.   Had Plaintiff and the other members of the Class known of the Defective Infotainment System within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

131.   Through its omissions regarding the Defective Infotainment System within the Class Vehicles, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

132.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have

purchased the Class Vehicles at all if the Defective Infotainment System had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT FIVE

### UNJUST ENRICHMENT
**(Individually and on Behalf of the National and Florida Class)**

133.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

134.   Plaintiff brings this cause of action individually and on behalf of the Florida and National Classes.

135.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Defective Infotainment System, and Plaintiff and the other members of the Class have overpaid for these vehicles.

136.   GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

137.   It is inequitable and unconscionable for GM to retain these benefits.

138.   Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

139.   GM knowingly accepted the unjust benefits of its wrongful conduct.

140.   As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## COUNT SIX

### NEGLIGENCE

### (Individually and on Behalf of the National and Florida Classes)

141.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

142.   Plaintiff brings this Count individually and on behalf of the members of the National and Florida Classes.

143.   Defendant owed a duty to Plaintiff and members of the classes to provide a vehicle that conformed with its publicly disseminated representations, its warranties, and promotional information given to Plaintiff and members of the Classes at the time of the respective transactions.

144.   Defendant harmed Plaintiff and members of the classes by negligently designing, testing, engineering, and incorporating the Defective Infotainment System into the Class Vehicles.

145.   Defendant's negligence was a substantial and necessary factor in causing Plaintiff and members of the classes harm and it was foreseeable by Defendant that Plaintiff and members of the classes would be harmed by negligently designing, testing, engineering, and incorporating the Defective Infotainment System into the Class Vehicles.

146.   As a result of Defendant's negligence, Plaintiff and members of the classes are entitled to recover damages in an amount to be proven at trial, and such other relief as the court may deem appropriate.

## COUNT SEVEN

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. §§ 2301, et seq.
### (Individually and on Behalf of the Florida and National Class)

147.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

148.   Plaintiff brings this Count individually and on behalf of the other members of the Florida and National Class (the "Class," for purposes of this Count).

149.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332 (a) and (d).

150.   Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

151.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

152.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

153.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

154.   In its express written warranties, Defendant expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects become apparent during the warranty period.

155.   Defendant's warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

156.   With respect to Class members' purchases or leases of the Class Vehicles, the terms of Defendant's written warranties and implied warranty became part of the basis of the bargain between GM and Plaintiff and other Class members

157.   Defendant breached the implied warranty of merchantability. Without limitation, the Class Vehicles have Defective Infotainment Systems, as described above, which renders the Class Vehicles unmerchantable.

158.   Defendant breached its express warranties by not offering a functioning repair for the Defective Infotainment System in the Class Vehicles as evidenced by GM's own admission in the Bulletin that it has not identified a remedy.

159.   Further, Defendant has refused to provide an adequate warranty repair for the Defective Infotainment System, thus rendering the satisfaction of any notice requirement futile. Class members reported the Defective Infotainment System failure to their dealer, but GM has failed to repair the defect.

160.   At the time of sale or lease of each Class Vehicle, Defendant knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defective Infotainment System.

161.   The amount in controversy of Plaintiff's individual claim exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000.00 exclusive of costs and interest, computed on the basis of all claims to be determined in this lawsuit.

162.   Plaintiff, individually and on behalf of the Class members, seeks all damages permitted by law in an amount to be proven at trial.

## VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

A.    For an order declaring that this action is properly maintained as a class action and appointing Plaintiffs as representatives for the Class, and appointing Plaintiff's counsel as Class counsel;

B.    That Defendant bears the costs of any notice sent to the Classes;

C.    For an order awarding Plaintiffs and the members of the Classes actual damages, economic damages, restitution, and/or disgorgement;

D.    For an order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

E.    For an order awarding Plaintiffs and the members of the Classes pre- and post-judgment interest;

F.    For an order awarding attorneys' fees and costs of suit, including expert's witness fees as permitted by law; and

G.    Such other and further relief as this Court may deem just and proper.

## VII.   JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all of the claims asserted in this Complaint so triable.


DATED: September 11, 2020          Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By:  /s/ John J. Nelson

John J. Nelson, Esq.
Trial Counsel
(Attorney Admission Forthcoming)
Keia James Atkinson, Esq.
501 West Broadway, Suite 1260
San Diego, CA 92101
Telephone:  (619) 238-1333
Facsimile:   (619) 238-5425

/s/ Christopher Mat Hittel
Christopher Mat Hittel, Esq.
Florida Bar No. 0696048
HITTEL LAW, P.A.
333  Sixth Avenue West
Bradenton, FL 34205
Tel: (941) 746-7777
Fax: (941) 746-1133
service@hittellaw.com


*Attorneys for Plaintiff*
*and the Putative Classes*