## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| Karen Boddison, individually and on behalf of all others similarly situated, | **Dispositive Motion** |
| Plaintiff, | Civil Action No.: 8:20-cv-02139 |
| v. | Hon. William F. Jung |
| GENERAL MOTORS LLC, a Delaware limited liability company | |
| Defendant. | |

## DEFENDANT GENERAL MOTORS LLC'S MOTION TO DISMISS

Defendant General Motors LLC ("GM"), through its undersigned counsel, hereby moves to dismiss the claims asserted in Plaintiffs' First Amended Complaint ("FAC") (ECF No. 34) pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). In support of this Motion, GM relies on the following Memorandum of Points and Authorities and materials referenced therein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction.

Plaintiffs' FAC attempts to manufacture a sweeping, nationwide class action out of what appears to be a handful of complaints of nothing more than a minor glitch in the software that operates their vehicles' infotainment systems. Although their infotainment systems have otherwise performed as intended, Plaintiffs claim that they and other Chevrolet and GMC vehicle owners have experienced different types of anomolies on just a *handful* of occasions: (1) the volume on the radio has increased without any user input; (2) the ringer for incoming calls has sounded after answering the phone; (3) the rearview camera image briefly

displayed after shifting into drive; (4) the system rebooted; and (5) the screen turned black. These rare (and transient) issues can all be attributed to a software glitch not unlike those encountered with smartphones and other types of electronic devices. And while they could conceivably be a source of irritation, they *have no impact on the safe and reliable operation of Plaintiffs' vehicles*.

Notably, GM has never denied that Plaintiffs' vehicles may benefit from a software update and—as Plaintiffs acknowledge—has now made such a software update available. And yet, despite GM's diligent effort to diagnose and address this customer satisfaction issue, Plaintiffs nevertheless seek to represent an unwieldy nationwide class of vehicle purchasers, and claim that GM has somehow breached express and implied warranties, and otherwise engaged in acts of fraud, negligence, and unjust enrichment. For the reasons explained below, Plaintiffs' claims all fail as a matter of law and should be dismissed.

## II.     Background.

In this case, three Plaintiffs allege that they have experienced various glitches in the infotainment systems installed in their model year 2019 and 2020 Chevrolet and GMC vehicles. Florida Plaintiff Karen Boddison's chief complaint appears to be sudden increases in the volume of the radio in her 2019 Chevrolet Colorado. *See* FAC ¶¶ 37–39. California Plaintiff Darr Hawthorne, on the other hand, claims that the infotainment system in his 2020 GMC Canyon "randomly reboots," that it "blares" navigation instructions or the radio at full volume, and that the image from the vehicle's rearview camera continues to display on the screen even after he shifts into drive. *Id.* ¶¶ 45–46. And Missouri Plaintiff Alex Hogan claims that the infotainment system in his 2019 Chevrolet Colorado "spontaneously reboots" and

that the volume of the radio fluctuates without user input and can only be stopped if he performs an elaborate ritual, which includes opening and closing the driver door (among other steps). *Id.* ¶ 53. He further claims that the alleged problems grew worse after he received a software update. *Id.* ¶ 53. Despite their different experiences, Plaintiffs allege that all these issues are the result of a singular "defect" caused by a "software anomaly." *See id.* ¶ 66.

The named Plaintiffs have varying experiences, including whether they have had a software update performed on their vehicle. Plaintiff Hawthorne received a software update on his vehicle, but he claims it was ineffective. The other two Plaintiffs, however, allege that they were told by dealers that no repair was available at the time they brought in their vehicles and have not returned now that they know a software update is available. *See id.* ¶ 41 (alleging that Plaintiff Boddison "was told that no repair could be performed because none was available"); *id.* ¶ 47 (alleging that Plaintiff Hawthorne "brought his vehicle in for repair and was denied a remedy," but not specifying why); *id.* ¶ 54 (alleging that a software update was performed on Plaintiff Hogan's vehicle but it "did not remedy the issue"). Despite alleging that the problems with their infotainment systems persist, Plaintiffs apparently continue to use their vehicles for their intended purpose of providing safe and reliable transportation. *See generally* FAC. Moreover, Plaintiffs acknowledge that GM has released various Technical Service Bulletins that are designed to remedy this issue. *See id.* ¶¶ 9–12. Yet, although two of the three named Plaintiffs have not even received the recommended repair, Plaintiffs allege that the fix GM has developed is somehow *categorically* ineffective. Indeed, other than vague assertions that the update failed for unnamed members of the

putative class, *see, e.g.*, *id.* ¶ 112, this implausible allegation appears to be based solely on a sample size of exactly one—Plaintiff Hogan.

III.    **Argument.**

A.    **Plaintiffs' Claims Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6).**

To withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead facts sufficient to create a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. As set forth below, the claims asserted in the FAC do not meet this standard.

1.    **Plaintiffs' Express Warranty Claims (Counts 2, 5, 9) Fail.**

a)    **GM's Warranty Excludes Coverage for Software Issues.**

The FAC alleges that the infotainment systems installed in each Plaintiff's vehicle is "defective" because Plaintiffs claim they have experienced certain glitches, including volume increases, rebooting, and alleged issues with the rearview camera. *See, e.g.*, FAC ¶ 7. According to the FAC, these issues are attributable to a "software anomaly." *Id.* ¶ 66. The New Vehicle Limited Warranty ("NVLW")[1] applicable to each Plaintiff's vehicle, however, expressly excludes coverage for such software issues, providing as follows:

---

[1] The FAC contains a few stray references to a "Florida Extended Warranty Sub-Class," but it does not define that putative class or allege the terms of any extended warranty. To the extent the FAC asserts claims on behalf of this undefined class, it is insufficient to put GM on notice of such claims and they should, therefore, be dismissed.

> This warranty does not apply to hardware or software of a third party device that is connected to the vehicle or its components, even if integrated or delivered with the vehicle. … ***Software distributed by GM inside or outside the vehicle (including, but not limited to system software or applications) is not covered by this Warranty***.

2020 GMC NVLW at 11 (attached hereto as Exhibit A) (emphasis added); 2019 Chevrolet NVLW at 11–12 (attached hereto as Exhibit B) (emphasis added).[2] Because the alleged defect is outside the scope of any express warranty, Plaintiffs' breach of express warranty claims fail and should be dismissed. *See, e.g.*, *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1318 (S.D. Fla. 2009) ("Under Florida law, a written warranty is treated as a contract between buyer and seller … and therefore may, by its terms, limit the remedies available."); *Zabit v. Ferretti Grp., USA*, No. C 06-01252 JSW, 2006 WL 3020855, at *4–5 (N.D. Cal. Oct. 23, 2006) (dismissing breach of express warranty claim where applicable warranty excluded coverage for the allegedly defective part); *Woodruff v. Chrysler Motors, LLC*, No. 07-4250-CV-C-SOW, 2008 WL 11337562, at *3 (W.D. Mo. June 12, 2008) (granting motion to dismiss breach of warranty claim where, as here, the repair at issue was not covered by the manufacturer's warranty); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992) ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.").

> **b)**     **Design Defects Are Not Covered by Any GM Warranty.**

Not only are software issues such as those described in the FAC expressly excluded from any warranty provided by GM, they also fall outside the scope of the warranty because

---

[2] Although the NVLWs at issue are not attached to the Complaint, the Court may properly consider them at the motion-to-dismiss stage because their terms are central to Plaintiffs' claims and are not in dispute. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

they are not defects in materials or workmanship. The NVLW applicable to Plaintiff Hawthorne's 2020 GMC Canyon expressly states as follows: "The warranty covers repairs to correct any vehicle defect **_related to materials or workmanship_** occurring during the warranty period." 2020 GMC NVLW at 4 (emphasis added). Similarly, the NVLW applicable to Plaintiff Boddison and Plaintiff Hogan's 2019 Chevrolet Colorados limits coverage to "repairs to correct any vehicle defect … **_due to materials or workmanship_** occurring during the warranty period." 2019 Chevrolet NVLW at 4 (emphasis added); *see also id.* at 12 ("The New Vehicle Limited Warranty only covers components when replacement or repair of these components is the result of a defect in material or workmanship."). As other courts have concluded in dismissing breach of warranty claims asserted against GM, this language limits coverage to defects in materials and workmanship and excludes coverage for design defects. *See, e.g.*, *Bostick v. General Motors LLC*, No. 5:19-cv-02451, ECF No. 37, at 12 (C.D. Cal. July 22, 2020) (finding that "the warranty covers vehicle defects due to materials or workmanship" and excludes coverage for design defects); *Nardizzi v. General Motors LLC*, No. 2:19-cv-03665-CJC-AFMx, ECF No. 31, at 6 (C.D. Cal. Aug. 29, 2019) (same); *Hindsman v. General Motors LLC*, No. 17-cv-05337-JSC, 2018 WL 2463113, at *6–8 (N.D. Cal. June 1, 2018) (same); *Sloan v. General Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *8–9 (N.D. Cal. Aug. 1, 2017) (same).

Thus, "to state a claim for breach of express warranty, Plaintiffs must allege that the defect is due to materials or workmanship." *Nardizzi*, No. 2:19-cv-03665-CJC-AFMx, ECF No. 31, at 6; *see also, e.g.*, *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019) ("The plain and ordinary meaning of the term 'defects in materials or workmanship' unambiguously

excludes 'design defects.'"). Here, however, Plaintiffs have not plausibly alleged that the various alleged glitches in their vehicle's infotainment system are defects in materials or workmanship, as opposed to ones of design. Indeed, the initial complaint alleged that the "Class Vehicles suffer from a *uniform design defect*," Compl. (ECF No. 1) ¶ 50 (emphasis added), in that "[t]he infotainment system in the Class Vehicles *was inadequately designed*, programmed, and/or incorporated to operate under the conditions it was intended by its designers to operate," *id.* ¶ 44 (emphasis added). Although these allegations have been conspicuously omitted from the FAC, Plaintiffs have not changed their defect theory. Then, as now, Plaintiffs contend that the infotainment system in *every* putative class vehicle shares the same allegedly defective software. *See, e.g.*, FAC ¶ 15 (alleging that the "same [defect] is present in *all* GMC and Chevrolet vehicles equipped with the 'IOR 7-inch in-dash Audio System'") (emphasis added). As the Eleventh Circuit has explained, such allegations describe a design defect, not a defect in materials or workmanship. *See Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1987) ("[The] distinction between 'aberrational' defects and defects occurring throughout an entire line of products is frequently used in tort law to separate defects of manufacture from those of design."); *see also, e.g.*, *Coba*, 932 F.3d at 123 (allegations that an alleged defect existed in every vehicle that was equipped with the fuel tank at issue were allegations of a design defect, not a defect in materials or workmanship); *Bostick*, No. 5:19-cv-02451-VAP-SP, ECF No. 37, at 13 (finding that the complaint's "'consistent and specific allegations of a uniform design defect'" were indicative of a design defect, not a defect in materials or workmanship) (quoting *Loo v. Toyota Motor Sales USA, Inc.*, No. 8:19-cv-00750-VAP, 2019 WL 7753448, at *7 (C.D. Cal. Dec. 20,

2019)); *Orange Transp. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 320 (W.D.N.Y. 2020) (finding that the plaintiff's claim was "'more appropriately characterized as a design defect' because it relie[d] on allegations regarding defects that 'are common to an entire class of vehicles based on their design'") (quoting *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018)). Because design defects are outside the scope of the NVLW, Plaintiffs' express warranty claims should be dismissed.

> **c)      Plaintiff Hawthorne's Express Warranty Claim (Count 5) Also Fails Because He Did Not Give GM Sufficient Opportunity to Repair the Alleged Defect.**

Plaintiff Hawthorne's express warranty claim fails for the additional reason that he fails to allege that he provided GM with more than one opportunity to repair his vehicle. Before a plaintiff can bring a claim for breach of express warranty under California's Song-Beverly Consumer Warranty Act, a manufacturer or its representative must be given "a reasonable number of attempts" to repair the goods to conform to the terms of the express warranty.  Cal. Civ. Code § 1793.2(d)(1). This means that "at a minimum there must be more than one opportunity to fix the nonconformity." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010). Here, however, the FAC alleges that Plaintiff Hawthorne presented his vehicle for repair only one time.  *See* FAC ¶ 47 (alleging only that Plaintiff Hawthorne "brought his vehicle in for repair and was denied a remedy"). Plaintiff Hawthorne's failure to present his vehicle to a GM repair facility a second time dooms his express warranty claim.

### 2.     Plaintiffs' Implied Warranty Claims (Counts 3, 5, 10) Fail.

#### a)     Plaintiffs Have Not Alleged Facts Demonstrating That Their Vehicles Were Unmerchantable.

Plaintiffs' implied warranty claims lack merit because Plaintiffs have not adequately pled that their vehicles have failed in their ordinary purpose of providing transportation. *See* Fla. Stat. § 672.314(2)(c); *Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013) ("In the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation."); *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) (explaining that under Missouri law, "[t]he implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods *satisfy a minimum level of quality*"). For one, the infotainment system is not an essential component for safe operation of the vehicle, but rather a convenience/luxury item that has no effect on the vehicle's ability to transport individuals from one point to another. *See Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 (N.D. Ga. 2005) (allegations of intermittent problems with a vehicle's radio, along with other alleged electrical defects, could not support an implied warranty claim).

Plaintiffs' conclusory allegations that the alleged "volume spikes" are a "safety issue" does not change this. *See* FAC ¶ 93. Setting aside the fact that any issue with the radio volume can be *eliminated* by simply turning it off, Plaintiffs have offered no plausible support for this allegation. Plaintiff Boddison points to a single, isolated incident in which she contends she was so surprised by a change in volume that she drove off the road. But

Plaintiff Boddison's idiosyncratic reaction to an issue she had previously experienced (and should have known how to avoid) is far from sufficient to plausibly establish that her vehicle is inherently unsafe or otherwise unmerchantable.

Plaintiff Hawthorne and Plaintiff Hogan's allegations that the issue has forced them to pull to the side of the road and placed them in a position of "danger" are likewise insufficient. After all, neither plaintiff alleges that this issue affected their ability to drive their vehicles or required them to pull off the road in a place that was unsafe. *Cf. Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1144 (9th Cir. 2012) (concluding that the plaintiffs' allegations of a safety defect were insufficient where, as here, they did not allege "a sufficient nexus between the alleged design defect and the alleged safety hazard"). Indeed, the perceived need to pull over a vehicle to lower the radio volume, while potentially an annoyance, is *clearly not an emergency* and does not *require* the driver to place himself in danger in order to mitigate the alleged malfunction. Accordingly, there is no necessary or plausible connection between the alleged defect and the alleged safety concern.

Moreover, the FAC makes clear that Plaintiffs continued to drive their vehicles even after they claim to have experienced issues with their vehicles' infotainment systems, and that they continue to drive their vehicles today. *See* FAC ¶¶ 38, 45, 54. Under these circumstances, Plaintiffs have not plausibly alleged that their vehicles were unmerchantable at the time of sale and their implied warranty claims should be dismissed. *See, e.g.*, *Amata v. Toyota Motor Sales U.S.A., Inc.*, No. EDCV1200168VAPSPX, 2013 WL 12248140, at *7 (C.D. Cal. Apr. 29, 2013) (dismissing implied warranty claim because despite claimed issues, the vehicles were still "fit for driving"); *In re Gen. Motors Corp. Anti-Lock Brake Prods.*

*Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) (no breach of implied warranty where, as here "plaintiffs have not alleged a defect that makes the vehicles unfit for the ordinary purpose of providing transportation … or that they have stopped driving their vehicles because of the defects"); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006) ("Where an automobile provides safe, reliable transportation, it is generally considered merchantable."); *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1233 (N.D. Ga. 2005) (no breach of implied warranty where, although plaintiff claimed vehicle was unsafe to drive, he continued to drive the vehicle).

### b)   Plaintiff Boddison's Implied Warranty Claim (Count 3) Fails for Lack of Privity.

Plaintiff Boddison's breach of implied warranty claim fails for the additional reason that she is not in privity with GM. Under Florida law, a purchaser cannot pursue a breach of implied warranty claim against a product manufacturer when she does not purchase the product directly from the manufacturer. *See Rees v. Engineered Controls Int'l, Inc.*, No. 06-1558-CIV, 2006 WL 3162834, at *2 (M.D. Fla. Nov. 2, 2006) ("Since 1988, Florida law has required privity between the manufacturer of the allegedly defective product and the consumer of such [product] in order for the consumer to assert an implied warranty claim.") (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988)); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321–23 (S.D. Fla. 2009) (collecting cases and discussing privity requirement for an implied warranty claim under Florida law).

Florida courts have applied this rule to preclude plaintiffs from pursuing implied warranty claims against auto manufacturers where, as here, they did not purchase their vehicles directly from the manufacturer, but instead from a dealership. *See, e.g., Speier-*

*Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (dismissing implied warranty claim for lack of privity where plaintiff purchased vehicle from dealer, not manufacturer); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. 3d DCA 2008) (allegations that authorized dealership was an agent of the manufacturer were insufficient to overcome the privity requirement for a breach of implied warranty claim); *Brophy v. DaimlerChrysler Corp.*, 932 So. 2d 272, 274–75 (Fla. 2d DCA 2005) (affirming dismissal of implied warranty claim against auto manufacturer for lack of privity); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.") (citing cases); *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. 4th DCA 2006) (same).[3] The Court should reach the same result here.

### 3. Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") Claims (Count 14) Fail as a Matter of Law and Cannot Be Brought on Behalf of a Putative Class.

Plaintiffs' claims for violations of the MMWA rise or fall with their state-law warranty claims. Because Plaintiffs have not stated a claim for breach of express or implied warranty under their respective states' laws, their MMWA claims must also be dismissed. *See, e.g.*, *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012) ("[I]n order to state a claim under the MMWA, the Plaintiff must adequately plead a cause of action for breach of written or implied warranties under Florida law."); *David*, 629 F. Supp. 2d at 1324

---

[3] *See also, e.g.*, *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 (11th Cir. 2006) (affirming dismissal of implied warranty claim under Florida law because plaintiff "purchased the motor home from a dealer and not directly from [the defendant]"); *McKissic v. Country Coach, Inc.*, No. 07-1488-CIV, 2008 WL 616093, at *4 (M.D. Fla. Mar. 3, 2008) (same).

("As previously discussed, Plaintiff's implied warranty [claim] fails under Florida law. Therefore, a MMWA claim based on breach of implied warranty fails.").

Plaintiffs' attempt to assert an MMWA claim on behalf of a putative class also fails. The MMWA expressly provides that an MMWA claim may not be brought on behalf of a putative class if "the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). As the weight of recent authority has concluded, this requires dismissal of Plaintiffs' putative MMWA class for lack of subject-matter jurisdiction. *See, e.g.*, *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) ("The text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs.").[4]

### 4. Plaintiffs' Fraud and Consumer Protection Claims (Counts 1, 4, 6, 7, 8, 11) Fail as a Matter of Law.

#### a) The FAC Does Not Satisfy Rule 9(b)'s Heightened Pleading Standard.

Plaintiffs' fraud and consumer protection claims must meet the heightened pleading standard of Rule 9(b). *See, e.g.*, *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (FDUTPA); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009) (UCL, CLRA, and FAL); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (MMPA). To satisfy this standard, the complaint must "set[ ] forth '(1) precisely what statements were made in what documents or oral representations or what

---

[4] *See also, e.g.*, *Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1287 (W.D. Wash. 2020); *Bostick*, No. 5:19-cv-02451, ECF No. 37, at 12; *Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF (PJWx), 2019 WL 3059931, at *11 (C.D. Cal. May 29, 2019); *Patterson v. RW Direct, Inc.*, No. 18-cv-00055-VC, 2018 WL 6106379, at *2 (N.D. Cal. Nov. 21, 2018); *MacDougall v. Am. Honda Motor Co.*, No. SACV 17-01079 AG (DFMx), 2017 WL 8236359, at *4 (C.D. Cal. Dec. 4, 2017).

omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Despite being on notice of this requirement after GM filed its motion to dismiss Plaintiffs' initial complaint, the FAC falls far short. Far from alleging the precise statements or omissions made, Plaintiffs rely on conclusory allegations, broad characterizations, and sweeping generalizations that do not reveal the "who, what, when, where, and how" of GM's alleged misconduct. *See USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257, at *3 (S.D. Fla. Feb. 16, 2016) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). Indeed, the FAC contains virtually no details whatsoever about the interactions each plaintiff had with GM (or anyone else) when they purchased their vehicles or about what materials (if any) they reviewed in deciding to make the purchase. For example, Plaintiffs allege that they were "exposed" to GM's "advertisements," "marketing and information pamphlets," their vehicles' "window sticker[s]," and "interacted with a salesperson" before they purchased their vehicles. *See* FAC ¶¶ 35, 44, 50. But the FAC contains no additional information about these advertisements, marketing materials, and interactions, including but not limited to what they said, when these representations or interactions occurred, or what facts GM allegedly failed to disclose. *See*

*generally id.* ¶¶ 35, 44, 50. Nor do Plaintiffs allege the manner in which GM's alleged omissions misled them or what GM obtained as a consequence of the alleged fraud.

Plaintiffs' failure to connect the dots between their sweeping allegations of fraud and their individual purchasing decisions is particularly significant where, as here, the warranties accompanying their vehicles clearly and conspicuously disclaimed coverage for software glitches of the type of which they complain. *See* sec. III.A.1.a, *supra*. At the very least, these disclaimers create the presumption that Plaintiffs understood they were accepting the risk of any potential defects in these components and belie any allegation that the desire to avoid bearing that risk was material to their overall purchasing decision. The threadbare allegations Plaintiffs rely on do not come close to overcoming this presumption.[5]

In any event, as other courts within this district and elsewhere have routinely found, the generic allegations upon which Plaintiffs rely are insufficient to sustain fraud and consumer protection claims. *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (dismissing plaintiff's CLRA and UCL claims where, as here, the complaint failed to allege "the particular circumstances surrounding [the defendant's] representations"); *D.H.G. Props., LLC v. Ginn Cos., LLC*, No. 3:09-CV-735-J-34JRK, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010) (dismissing FDUTPA claim where complaint contained "many generalized allegations regarding the overall fraudulent scheme" but "very few allegations actually purport[ing] to describe facts or events relating to Plaintiff, or Plaintiff's purchase of the property at issue"); *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1343 (S.D. Fla. 2013) (dismissing fraudulent omission claim for failure to satisfy Rule 9(b) where,

---

[5] To the extent Plaintiffs' fraud and/or consumer protection claims are based on GM's alleged refusal to repair the purported defect under warranty, they fail for this same reason.

as here, the plaintiffs "[did] not allege the specifics of Honda's purported scheme, the means Honda used to perpetrate the scheme, or specific facts indicating the existence of the alleged scheme"); *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593 BRO (PJWx), 2017 WL 6549931, at *18 (C.D. Cal. Aug. 21, 2017) ("As Plaintiffs have failed to establish that [the Florida purchasers] viewed any of Defendants' alleged representations …, their claims under FDUTPA fail."); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 2d 1050, 1089 (C.D. Cal. 2015) ("[W]here a plaintiff has not seen or heard an allegedly deceptive advertisement, she cannot challenge it under the FDUTPA."); *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *15 (S.D. Cal. Dec. 23, 2015) (dismissing FDUTPA claim where plaintiffs failed "to specifically allege that they viewed any … statements or advertisements" that were the basis of the dispute); *Buckley v. BMW N. Am.*, No. CV 19-1255-MWF-SS, 2020 WL 3802905, at *9 (C.D. Cal. Mar. 9, 2020) (dismissing common law fraud, UCL, and CLRA claims under Rule 9(b) where plaintiff failed to plead with sufficient particularity the when and who of the circumstances constituting the alleged fraud, including the identities and times of phone calls with the defendants' representatives); *Gertz v. Toyota Motor Corp.*, No. CV-10-1089-PSG-VBKx, 2011 WL 13142144, at *4 (C.D. Cal. Apr. 28, 2011) (dismissing CLRA and UCL claims under Rule 9(b) where plaintiff failed to plead that they saw the subject advertisements and instead were "exposed" to defendant's marketing); *Budach v. NIBCO, Inc.*, No. 2:14-CV-04324, 2015 WL 3853298, at *7 (W.D. Mo. June 22, 2015) (dismissing claim under the MMPA under Rule 9(b) where plaintiff failed to "allege with specificity the time and place of

the conduct complained of, the content omitted, the identity of the person who omitted it, and what was obtained or given up thereby").

b)      **Plaintiffs Have Not Alleged Actionable Misrepresentations.**

To the extent Plaintiffs' consumer protection claims are based on alleged misrepresentations, they fail as a matter of law.[6] As a threshold matter, the FAC does not allege with particularity that Plaintiffs saw any representations made by GM before they purchased their vehicles. *See* sec. III.A.4.a, *supra*. Moreover, the only affirmative representations that are even mentioned in the FAC could not support a claim even if Plaintiffs had seen them. For example, the FAC alleges that GM's "website for Chevrolet branded vehicles" states that "'[customer] safety and well-being are at the core of everything we do. Because we always have you in mind, our vehicles offer advanced technology to help you drive as safely as possible." FAC ¶ 6. Setting aside that Plaintiffs have not offered any allegations establishing that there is anything false about this representation, it is a classic example of inactionable puffery. *See, e.g.*, *Davis v. Fresh Market, Inc.*, No. 1:19-CV-24245-PCH, 2020 WL 3489369, at *3–4 (S.D. Fla. June 26, 2020) (dismissing FDUPTA claim that was based on "non-actionable puffery touting the unchallenged quality of the product"); *Smith v. Forest River, Inc.*, No. 19-14174-CIV, 2019 WL 8226095, at *3 (S.D. Fla. Nov. 25, 2019) (dismissing FDUTPA claim and explaining that "puffery" is "not the kind of representation[ ] for which FDUTPA provides redress"); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) ("'Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely,' and thus are not

---

[6] The FAC does not assert a common-law fraud claim based on affirmative representations.

17

actionable under the UCL, FAL, or CLRA.") (quoting *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)) (alterations omitted); *Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12088132, at *2 (W.D. Mo. Oct. 17, 2012) ("[A] vague and subjective claim of product superiority that amounts to puffery … is not actionable … under the MMPA."). The same is true of GM's alleged representations that its vehicles are "safe and dependable." *See* FAC ¶ 95. Because Plaintiffs have not alleged that GM made any actionable misrepresentations, their misrepresentation-based claims fail.

      **c)**      **Plaintiffs' Omission-Based Claims Fail Because They Do Not Plausibly Allege That GM Knew of the Alleged Defect at the Time They Purchased Their Vehicles.**

To state a fraud or consumer protection claim based on a failure to disclose, Plaintiffs must plausibly allege—among other things—that GM knew of the alleged defect at the time they purchased their vehicles. *See Aprigliano*, 979 F. Supp.2d at 1342; *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012); *Wilson*, 668 F.3d at 1145 (UCL and CLRA); *Budach*, 2015 WL 3853298, at *8 ("[A] claim for omission of a material fact under the MMPA has a scienter requirement."). The FAC falls far short.

In an attempt to allege knowledge, Plaintiffs rely primarily on a handful of purported complaints submitted to NHTSA or posted on internet message boards unaffiliated with GM. But these internet postings do not establish GM's knowledge. As an initial matter, all of these postings except for one relate to different vehicle models than the vehicles Plaintiffs purchased and do not identify which infotainment system is installed in the vehicle. *See* FAC ¶¶ 82–87 & Ex. D (collecting complaints relating to various model year Silverado and Sierra

vehicles). They are thus irrelevant and cannot plausibly establish GM's knowledge of an alleged defect in the "IOR 7-inch in-dash Audio System" at issue here. The sole internet posting that relates to one of the vehicles a named plaintiff purchased (a model year 2019 Chevrolet Colorado) post-dates Plaintiff Hogan's vehicle purchase and cannot establish, on its own, that GM knew of the alleged defect at the time Plaintiffs purchased their vehicles. *See, e.g.*, *Aprigliano*, 979 F. Supp. 2d at 1343 (allegations of anonymous complaints to NHTSA and posted on internet forums were insufficient to state a fraud claim); *Resnick*, 2017 WL 6549931, at *31 (holding that purported customer complaints posted on the internet were insufficient to confer knowledge on the part of the manufacturer and dismissing FDUTPA claim on that basis); *Schechter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2019 WL 3616902, at *6 (D.N.J. July 29, 2019) (finding that a handful of consumer complaints "[did] not demonstrate Defendants' knowledge of the [alleged] [d]efect"); *Dawson v. General Motors LLC*, No. 19-8680, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) ("[A] company cannot be certain about a systematic part failure based on about 100 instances of failure in a national market over the course of several years."); *McQueen v. BMW of N. Am., LLC*, No. 12-6674(SRC), 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) ("[C]ustomer complaints do not constitute *per se* knowledge on the part of BMW that a defect exists in the [v]ehicles."); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (holding that 26 customer complaints prior to the plaintiff's purchase, including several on the defendant's own website, were insufficient). And many of the purported customer complaints excerpted in Exhibit D to the FAC post-date all Plaintiffs' vehicle purchases and thus cannot establish GM's knowledge at the relevant time. *See, e.g.*, *Resnick*,

2017 WL 1531192, at *16 (consumer complaints that post-date the plaintiffs' vehicle purchases "do not give rise to the inference that Defendants were aware of any alleged defect at the time of Plaintiffs' purchases"); *Granillo v. FCA US LLC*, No. 16-153 (FLW) (DEA), 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (same); *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250 (FLW) (DEA), 2015 WL 3487756, at *7 (D.N.J. June 2, 2015).

Plaintiffs also allege—in wholly conclusory fashion—that "[v]ehicle manufacturers monitor NHTSA and other databases for consumer complaints," FAC ¶ 81, that GM "would have gained comprehensive and exclusive knowledge" of the alleged defect during the "prelease process of designing, manufacturing, engineering, and testing the Class Vehicles," *id.* ¶ 80, and that GM "knew about the Defective Infotainment System through its own investigation," *id.* ¶ 89. But Plaintiff does not allege that these "databases," testing, and investigations actually revealed the alleged defect, much less put GM on notice that it existed in the specific vehicles they purchased. *See generally* FAC; *see also, e.g.*, *Wilson*, 668 F.3d at 1147 (rejecting similar allegations as "merely conclusory"). Because Plaintiffs have not plausibly alleged that GM knew of the alleged infotainment system defect at the time they purchased their vehicles, their omission-based claims should be dismissed.

### d)    Plaintiff Boddison's Fraudulent Omission Claim (Count 11) is Barred by the Economic Loss Rule.[7]

"Florida's economic loss rule applies in products liability cases to preclude 'recovery of economic damages in tort where there is no property damage or personal injury.'" *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1224 (S.D. Fla. 2017) (quoting *Tiara Condo. Ass'n v.*

---

[7] The FAC asserts a fraudulent omission claim only on behalf of Plaintiff Boddison and the members of the putative Florida class.

*Marsh & McLennan Cos.*, 110 So. 3d 399, 404 (Fla. 2013)). As various federal courts have concluded, "the Florida Supreme Court did not intend any 'fraudulent inducement' exception to the economic loss rule in the products liability context." *Id.*; *see also, e.g., In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338–39 (S.D. Fla. 2017) (dismissing plaintiff's fraudulent omission claims where, as here, those claims "allege precisely what a breach of warranty claim would allege—namely, that the Mazda vehicles did not work as promised"); *Burns v. Winnebago Indus., Inc.*, No. 8:13-cv-1427-T-24, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013); *see also In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 13-md-2495, 2015 WL 3796456, at *3 (N.D. Ga. June 18, 2015) (dismissing fraudulent concealment claim under Florida law because the alleged misrepresentations and omissions "related to whether [the] [d]efendant adequately performed under the contract— that is, whether [the] [d]efendant breached the agreement by providing … defective [products]" and noting that "simply applying the label of fraud to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss rule").

Here, Plaintiff Boddison's fraudulent concealment claim is based on the same allegations as her breach of warranty claims—namely, that there is an alleged defect in the infotainment system installed in her 2019 Colorado. Moreover, Plaintiff Boddison seeks only to recover for economic loss and does not allege any personal injury or property damage. As the cases cited above hold, such a claim is barred by the economic loss rule.

> **e)      Plaintiff Hawthorne's UCL Claim (Count 7) Fails For Additional Reasons.**

The UCL prohibits (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cal. Bus. & Prof. Code § 17200. The FAC purports to assert

claims under all three prongs in a wholly conclusory fashion, *see* FAC ¶ 235, but none are plausibly alleged with particularity. *First*, Plaintiff Hawthorne has failed to allege a violation of the "unlawful" prong because he has not plausibly stated a claim for violations of any other law. *See, e.g.*, *Stokes v. CitiMortgage, Inc.*, No. CV-00278 BRO (SHx), 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) ("If a plaintiff cannot state a claim under the predicate law, … the [claim under the "unlawful" prong of the UCL] also fails.").[8] *Second*, as explained above, Plaintiffs fail to plausibly plead that GM knew of any alleged defect (let alone knew of such a defect prior to their purchases) and so they fail to allege a "fraudulent" act or practice. *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690-PSG (JCx), 2012 WL 313703, at *3 (C.D. Cal. Jan. 23, 2012). *Third*, Plaintiffs do not plausibly allege facts showing how GM's conduct was "unfair" under any of the tests employed by courts to evaluate the "unfair" prong.[9] *See Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 966

---

[8] To the extent Plaintiff Hawthorne's claim under the UCL's "unlawful" prong is based on an alleged violation of regulations governing rearview cameras, it also fails as a matter of law. First, Plaintiff Hawthorne has not plausibly alleged that GM failed to comply with any such regulations. *See* FAC ¶ 46 (alleging only that Plaintiff Hawthorne's rearview camera, in certain limited instances, "hesitate[d]" to return to the main display for what he believed was an "unreasonable" amount of time). Nor has Plaintiff Hawthorne plausibly alleged an economic injury as a result of any such violation, as required. *See, e.g.*, *Khan v. 7-Eleven, Inc.*, No. ED CV 14-00522 DMG (PLAx), 2015 WL 12781203, at *2–3 (C.D. Cal. May 6, 2015).

[9] These three tests are: (1) the "tethering test," which requires that the "public policy which is a predicate to a consumer unfair competition action" must be "tethered to specific constitutional, statutory, or regulatory provisions"; (2) the "balancing test," which asks whether the alleged practice "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim"; and the *Camacho* or "Section 5" test, which incorporates the definition of "unfair" from the Federal Trade Commission Act and requires that the consumer's injury be substantial, not outweighed by any countervailing benefits, and one that consumers could not have reasonably avoided. *ABC Servs. Grp., Inc. v. United HealthCare Servs., Inc.*, No. SACV 19-0531-DOC, 2019 WL

(C.D. Cal. 2016). Moreover, because Plaintiffs' claims under all three prongs are based on the same alleged conduct, and because their claims for violations of the "unlawful" and "fraudulent" prongs fail for the reasons discussed above, their claim for violations of the "unfair" prong likewise should be dismissed. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017); *see also Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (dismissing claim where "the cause of action under the unfair prong of the UCL overlaps entirely with Plaintiff's claims" under the fraudulent prong of the UCL).

*Finally*, Plaintiff Hawthorne's UCL claim fails because it relies on the same (insufficient) factual predicates as his breach of warranty claims, and he therefore has an adequate remedy at law. *See, e.g.*, *Loo*, 2019 WL 7753448, at *13 (dismissing UCL claims with prejudice as duplicative of breach of warranty claims); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020) (affirming dismissal of UCL claim where the plaintiff "fail[ed] to demonstrate that she lacks an adequate legal remedy").

### f) Plaintiff Hawthorne's FAL Claim (Count 6) Fails as a Matter of Law for Additional Reasons.

The FAL makes it unlawful for any person "to make or disseminate or cause to be made or disseminated before the public … any statement … which is untrue or misleading." Cal. Bus. & Prof. Code § 17500. The plain text of this statute "does not encompass omissions." *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 668 (N.D. Cal. 2016). And, as set

---

4137624, at *9 (C.D. Cal. June 14, 2019) (citing *Dram v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 257–58 (2010)).

forth above, the FAC does not allege that GM made any actionable misrepresentations. *See* sec. III.A.4.b, *supra*. Accordingly, Plaintiff Hawthorne's FAL claim should be dismissed.

### 5.   Plaintiffs' Negligence Claims (Count 13) Are Barred by the Economic Loss Rule.

As noted above, under the economic loss rule, a plaintiff may not recover in tort against a product manufacturer "for economic damages caused by a defective product beyond those damages provided by warranty law." *Tiara Condo. Ass'n,*, 110 So. 3d at 403; *Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 902 (Fla. 1987); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) ("[I]n California, a consumer may not recover under a negligence theory 'for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.' … Purely economic damages to a plaintiff which stem from disappointed expectations from a commercial transaction must be addressed through contract law; negligence is not a viable cause of action for such claims.") (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004)); *Wilbur Waggoner Equip. & Excavating Co. v. Clark Equip. Co.*, 668 S.W.2d 601, 603 (Mo. Ct. App. 1984) ("It is the law in Missouri … that recovery in tort for purely economic damages is limited to those cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence."). Thus, Plaintiffs cannot pursue negligence claims that are "dependent on the same fundamental allegations contained in the breach of warranty claim—specifically, that [an auto manufacturer] breached the terms of its Warranties by providing Plaintiffs with defective [vehicles]." *Aprigliano*, 979 F. Supp. 2d at 1338. Plaintiffs' negligence claims should, therefore, be dismissed.

### 6.     Plaintiffs' Unjust Enrichment Claims (Count 12) Fail.

Plaintiffs' unjust enrichment claims are based on the same alleged facts as their breach of warranty claims. The NVLWs covering Plaintiffs' vehicles are express contracts, and under the law of each state at issue, an action for unjust enrichment cannot lie in the face of an express contract. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1195 (S.D. Fla. 2017); *David*, 629 F. Supp. 2d at 1324; *see also Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1266 (M.D. Fla. 2013) ("Plaintiff does not contest that there was a valid mortgage contract between the Parties. Thus, Plaintiff's claim for unjust enrichment fails."); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim under Federal Rule 18."); *Kraft Co., Inc. v. J & H Marsh & McLennan of Fla., Inc.*, No. 04-2359-CIV, 2006 WL 1876995, at *3 (M.D. Fla. 2006) (dismissing unjust enrichment claim because claim arose out of performance of an express contract); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002) (dismissing unjust enrichment claim because the plaintiffs did not contest the existence of an express contract governing the subject of the dispute); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) ("If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply."). Accordingly, Plaintiffs' unjust enrichment

claims fail as a matter of law. *See, e.g.*, *David*, 629 F. Supp. 2d at 1324-25 (dismissing unjust enrichment claim where, as here, "[t]he basis of [the] claim is the alleged defect in the frame of the motorcycle, which is also the basis of Plaintiff's breach of express warranty claim"); *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014) ("[B]ecause there is an express warranty governing Plaintiff's rights, her unjust enrichment claim must fail. Plaintiff's failure to state a claim for breach of warranty does not save the unjust enrichment claim.") (citation omitted); *Bostick*, No. 5:19-cv-02451, ECF No. 37, at 20-21 (dismissing unjust enrichment claims where, as here, the plaintiffs did not dispute the existence of GM's NVLW).

### B.   The Putative Nationwide Class Should be Dismissed and Any Florida Class Limited to Purchasers of 2019 Chevrolet Colorado and 2020 GMC Canyon Vehicles.

Even if the Court finds that Plaintiffs have pled a viable cause of action against GM (and it should not, for the reasons described above), the Court should substantially narrow the scope of the putative class alleged in the FAC. *First*, Plaintiffs cannot pursue claims on behalf of a putative nationwide class. *Second*, Plaintiffs lack standing to represent purchasers of vehicles other than the 2019 Chevrolet Colorado and 2020 GMC Canyon).

#### 1.   The Putative Nationwide Class Claims Should Be Dismissed.

To establish standing to sue, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quotation marks omitted). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the

defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Thus, "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000). In other words, the mere fact that a plaintiff has standing to pursue claims against a defendant under the laws of one state does not thereby confer standing on that plaintiff to represent absent class members whose claims arise under the laws of other jurisdictions. *See, e.g.*, *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2020 WL 7866674, at *18 (S.D. Fla. Dec. 31, 2020) (dismissing for lack of standing claims brought under the laws of states for which there is no class representative); *Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173, 1181 (S.D. Fla. 2019) ("Plaintiff lacks standing to assert claims on behalf of class members who purchased GM vehicles outside of Florida."); *Feldman v. BRP US, Inc.*, No. 17-CIV-61150, 2018 WL 8300534, at *6 (S.D. Fla. Mar. 28, 2018) ("[N]amed plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that [from] which the plaintiff's own claim arises."); *In re Takata Airbag Prods. Liab. Litig.*, MDL No. 2599, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise."); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (dismissing, for lack of standing, "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted"); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 267–68 (S.D. Fla. 2003) (finding that named plaintiffs, who were all Florida

residents with Florida-law claims, lacked "standing to raise questions of state law for states other than Florida" and the court lacked "jurisdiction to evaluate the law of those other states"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) ("[T]he named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief. Class allegations that others suffered injuries giving rise to claims 'add … nothing to the question of standing.'") (quoting *Lewis*, 518 U.S. at 357). Because Plaintiffs lack standing to represent individuals who were injured under the laws of states other than Florida, California, and Missouri, the putative nationwide class claims should be dismissed.

      **2.**      **Plaintiffs Lack Standing to Sue on Behalf of Individuals Who Purchased or Leased Vehicles Other Than the 2019 Chevrolet Colorado or 2020 GMC Canyon.**

To demonstrate Article III standing to sue, a plaintiff must plausibly allege facts showing that she "suffered an 'injury in fact'" that is "'fairly traceable to the challenged action of the defendant,'" and that it is "'likely, as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations omitted). As the Eleventh Circuit made clear in *Prado-Steiman ex rel. Prado v. Bush*, the plaintiff must independently meet *each* of these requirements as to *each* claim asserted against the defendant. 221 F.3d at 1280.

In the context of a consumer class action such as this one, *Prado-Steiman* requires dismissal of claims relating to products the named plaintiff did not purchase, even if the plaintiff alleges that such products share the same alleged defect as the product the named plaintiff purchased. *See, e.g.*, *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1303 (S.D. Fla. 2020) (collecting cases and holding that "[p]laintiffs do not have standing to assert

claims based on the marketing of products that they did not purchase and that therefore the classes described in the Complaint are overbroad"); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1222 (S.D. Fla. 2018) (dismissing claims on standing grounds and rejecting plaintiffs' arguments that defendant's products "all contain identical SSBS systems with the same defect" because "similarity between products does not confer standing in the Eleventh Circuit"); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1393-94 (S.D. Fla. 2014) ("[A] named plaintiff in a consumer class action lacks standing to challenge a non-purchased product because there is no injury-in-fact as to that product, even if he purchased a substantially similar product ....") (citing *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013)).[10]

The case of *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, 2015 WL 11197772 (S.D. Fla. July 22, 2015)—a case that, like this one, involved allegations of a design defect that was allegedly present in several different models of vehicles manufactured by the same defendant—is illustrative. There, the plaintiff filed a putative class action purporting to represent all Florida purchasers or lessees of the 2011–2013 Ford Explorer, Ford Edge, and Lincoln MKX. *Id.* at *2 & n.1. The named plaintiff herself, however, had

---

[10] *See also, e.g.*, *Holliday v. Albion Labs., Inc.*, No. 9:14-cv-81294, 2015 WL 10857479, at *5 (S.D. Fla. June 9, 2015) (applying *Prado-Steiman* to "conclude[] that a plaintiff cannot establish Article III standing to bring claims for products he did not purchase"); *Blobner v. R.T.G. Furniture Corp.*, No. 8:17-cv-1676-T-30SPF, 2019 WL 3808130, at *3-4 (M.D. Fla. July 24, 2019) (same); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (same); *Decerbo v. Melitta U.S.A. Inc.*, No. 8:16-cv-850-T-17AAS, 2016 WL 7206244, at *3 (M.D. Fla. Oct. 17, 2016) (same); *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *16–17 (S.D. Fla. Mar. 20, 2015) (same); *Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *3–4 (S.D. Fla. Jan. 20, 2015) (same); *Reilly v. Amy's Kitchen, Inc.*, No. 13-21525-CIV, 2013 WL 9638985, at *2 (S.D. Fla. Dec. 9, 2013), *reconsideration denied*, 2014 WL 905441 (S.D. Fla. Mar. 7, 2014) (same).

purchased only a Ford Explorer. *Id.* "[C]onsistent with the … Eleventh Circuit's opinion in *Prado-Steiman*," the Court concluded that the plaintiff lacked standing to sue as to products she did not purchase and dismissed the claims relating to the Ford Edge and Lincoln MKX even though she alleged these models all had the same defect, design, and/or components. *Id.* at *3–5 (allegations that other vehicles "have the same exhaust contamination problem, … are built on the same or comparable platforms, have the same or comparable design, use the same or comparable components, and have the same problem" were insufficient to confer standing as to claims relating to products the named plaintiff did not purchase).

Here, Plaintiffs seek to represent purchasers of a host of Chevrolet and GMC cars, trucks, and SUVs. As the cases cited above make clear, the allegation that all of these vehicles share the same allegedly defective infotainment system is not enough to confer standing to sue on behalf of purchasers of vehicles other than the 2019 Chevrolet Colorado and the 2020 GMC Canyon. *See, e.g.*, *Leon*, 301 F. Supp. 3d at 1221.

**IV.    Conclusion.**

For the foregoing reasons, GM respectfully requests that the Court grant its motion to dismiss.

DATED: January 18, 2021          Respectfully submitted,

*/s/ Stephen B. Devereaux*
Stephen B. Devereaux (admitted *pro hac vice*)
Susan M. Clare (admitted *pro hac vice*)
Adam Reinke (admitted *pro hac vice*)
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: 404.572.4600
F: 404.572.5100
sdevereaux@kslaw.com
sclare@kslaw.com
areinke@kslaw.com

*Counsel for Defendant General Motors LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2021, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered users.

*/s/ Stephen B. Devereaux*
Stephen B. Devereaux
